UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

RELIANCE INSURANCE COMPANY,

        Plaintiff,

  -against-                                05 Civ. 1056 (KMW)
                                                ORDER

TRISS CORPORATION,

        Defendant.

------------------------------------------X

WOOD, U.S.D.J.:

     Plaintiff, Reliance Insurance Company, ("Reliance") brings this collection action seeking unpaid insurance premiums. The insured, defendant Triss Corporation ("Triss"), moves to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3) and 12(b)(6), respectively. Triss also moves under Fed. R. Civ. P. 41(d) for costs incurred during a previous lawsuit that Reliance brought in Pennsylvania and subsequently voluntarily dismissed.

     For the reasons stated below, the motion to dismiss for lack of personal jurisdiction is GRANTED. Thus, the issues of improper venue and failure to state a claim are not reached. The motion for costs is DENIED.

**I. Background**

     Reliance is an insurance company currently engaged in a liquidation proceeding overseen by the Insurance Commissioner of

the Commonwealth of Pennsylvania.[1]  Reliance is incorporated in
Pennsylvania and has its administrative offices and principal place
of business in New York.  Reliance is the successor by merger to
Reliance National Insurance Company and Reliance National Indemnity
Company.  These predecessors issued Triss various virtually
identical insurance policies ("Policies") over an eight year period
from 1991 to 1999.

Triss is a Michigan corporation with its principal place of
business in Michigan.  It leases construction equipment, performs
some contracting work, and sells sand and gravel throughout
Michigan.  It has no offices or employees in New York and does not
own property here.

JLS Group, Inc. ("JLS"), a non-party, is a risk-management and
insurance-brokerage company based in New York.  JLS brokered the
sale and management of the Policies.  Reliance issued the Policies
to JLS, charged premiums to JLS, and renewed the policies through
JLS.  Triss similarly paid its premiums to JLS who passed them on
to Reliance.

The Policies contain provisions for the retrospective
adjustment of premiums.  Each November, Reliance audits Triss'
losses versus the amount of premiums it has already paid and
adjusts the amount due on the prior premiums accordingly.  After
the adjustments, Reliance might be required to refund money to

---

[1] Because this is a motion to dismiss, the Court accepts as true the allegations in the plaintiffs' complaint.  See Blue Tree Hotels Investment v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2nd Cir. 2004).

Triss, or Triss to make additional payments to Reliance. JLS served as an intermediary to these transactions. The payments due on the adjusted premium amounts are what Reliance seeks in this lawsuit.

The Policies also contain an arbitration clause, which provides for arbitration proceedings to be held at Reliance's offices in New York. This clause provides that the parties may apply to New York courts to confirm an arbitration award or enforce a decision of the arbitrators.

Reliance initiated an action against Triss in Pennsylvania state court in October 2004 by filing a writ of summons. In December 2004, Reliance voluntarily discontinued the action before a complaint or a response was filed. Defendant now moves for the costs of that action, including attorney's fees, under Fed. R. Civ. P. 41(d).

**II. Discussion**

A. *Personal Jurisdiction*

Plaintiff argues against the motion to dismiss for lack of personal jurisdiction on two grounds: [i] that through its interactions with Reliance or by transacting through JLS as its agent, Triss did business in New York, thus submitting to jurisdiction under New York's C.P.L.R. §302(a); and [ii] that because the policies contained an agreement to arbitrate in New York, Triss has essentially consented to personal jurisdiction in

New York.  Neither argument is persuasive.

(1) *Transacting Business in New York*

New York's personal jurisdiction statute provides that anyone who, "in person or through an agent...transacts any business within the state" submits to personal jurisdiction here. N.Y.C.P.L.R. §302(a)(2005).

Because subject matter jurisdiction in this case is predicated on diversity of citizenship, the Court has personal jurisdiction over the parties to the same extent that a New York state court of general jurisdiction would have.  See Bank Brussels Lambert v. Fiddler Gonzales & Rodrigues, 305 F.3d 120, 124 (2d Cir. 2002).  The Court must determine both whether personal jurisdiction lies under New York law and whether the exercise of jurisdiction in this case comports with the Due Process.  Id.

The parties agree that Triss is not a citizen of New York. Therefore, jurisdiction is proper as to Triss if it has a continuous presence in New York, or systematic contact with a New York entity.  See N.Y. C.P.L.R. § 301; Landoil Res. Corp. v. Alexander & Alexander Svcs., Inc., 565 N.E.2d 488, 490 (N.Y. 1990).  "A foreign corporation is amenable to suit in New York courts. . . if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted."  Id.

4

Triss has had no such "continuous and systematic" contact with New York.

(a) *Minimum Contacts Analysis as to Triss's interactions with Reliance*

Reliance first relies on Burger King v. Rudzewicz, 471 U.S. 462 (1985), for the proposition that Triss, through its dealings with Reliance, conducted sufficient business with a New York entity to establish jurisdiction. Reliance over-states the sweep of Burger King. In Burger King the defendants contesting jurisdiction had entered into a 20-year franchisee contract with the plaintiff's corporation. The defendant and plaintiff interacted regularly, and plaintiff maintained steady supervision over the operation of the defendant's business. Defendant had attended training courses at the plaintiff's headquarters in its home state. See Burger King, 471 U.S. at 465-467. Burger King is of no help to Reliance. Here, by contrast, Triss has merely annually renewed its insurance policy with a New York company; the policy insures risks in Michigan, and Reliance and Triss have no ongoing interaction at all.

(b) *Agency Relationship Analysis*

Next, Reliance asserts that because JLS managed many of the interactions between the Reliance and Triss, that JLS was an agent of Triss, and that through JLS, Triss thus submitted to

5

jurisdiction. See Kreutter v. McFadden Oil Corp. 522 N.E.2d 40, 44 (1988)(holding that an agent's actions in a given state on behalf of a principal are sufficient to establish jurisdiction).

However, Reliance is incorrect that JLS was Triss's agent. New York gives insurance brokers a "dual agency" status. See Bohlinger v. Zanger, 306 N.Y. 228, 230 (1954). A broker sometimes acts as an agent of the insured, and sometimes of the insurer; when acting to collect premiums, as here, the broker is deemed to be acting on behalf of the insurer. See Anglo Am. Ins. Group v. Calfed, Inc., 889 F.Supp. 1070. 1073 (S.D.N.Y. 1995)("Whenever the brokers collect premiums, they are deemed to be acting under the authority of the insurance company...")[2] Therefore, because under New York law JLS was an agent of Reliance and not of Triss, Triss has not submitted, by virtue of its dealings with JLS, to New York jurisdiction.[3]

(2) *Agreement to Arbitrate in New York*

In asserting that this Court has personal jurisdiction over Triss, Reliance also relies on the clause in the policies issued to Triss that agrees any disputes under the policies will be

---

[2] Nor does Reliance allege any sort of collusion, as was alleged in Kreutter, between JLS and Triss that could give rise to jurisdiction. See Kreutter, 522 N.E.2d at 463.

[3] By themselves, the payments that Triss made to Reliance through JLS do not establish jurisdiction. See Continental Field Serv. v. ITEC Int'l, 894 F.Supp. 151, 154 (holding that sending payments into New York was not sufficient grounds for sustaining personal jurisdiction).

arbitrated in New York.

For the proposition that such a clause alone confers jurisdiction, Reliance cites to Merrill Lynch v. Lecopulos, 553 F.2d 842 (2nd Cir. 1977). In that case, a Greek resident contracted to open a commodities account that was managed in New York. Id. at 843-44. The Second Circuit held that the agreement in the contract to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York for the purposes of resolving a motion to stay the agreed-to arbitration. Id. at 844. In so holding, the Court used broad language that "[b]y agreeing to arbitrate in New York. . . [the parties] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York." Id. However, the Court's rationale was narrow, and was based on its conclusion that "[t]o hold otherwise would be to render the arbitration clause a nullity."[4]

Subsequent cases have quoted the broad language of Lecopolus. See, e.g., American Bureau of Shipping v. Tencara Shipyard, 170 F.3d 349, 352 (2nd Cir. 1999). However, these cases do not actually rely on the parties' agreement to arbitrate as the sole premise for finding jurisdiction. See id. (holding

---

[4]The Court is skeptical that refusal to enforce an agreement to arbitrate in New York in New York courts would actually mean that the parties could not be forced to arbitrate in New York; presumably a court in a different state could compel arbitration in New York. But this issue is not presented.

7

that defendants were equitably estopped from asserting a lack of personal jurisdiction). Moreover, there are no Circuit cases that find jurisdiction based only on an agreement to arbitrate in New York in a case that does not involve matters of enforcement of the arbitration agreement itself. See id. (considering motion to compel arbitration).

Additionally, at least one Second Circuit case has limited the sweeping language of Lecopulos. The Court in Amoco v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648 (2nd Cir. 1979), attempted to reconcile Lecopolus with other Second Circuit cases that would have required a greater showing of contacts with the forum in order to establish personal jurisdiction. The Amoco case cited Lecopulos for the rule that a New York arbitration clause "carries considerable weight" in determining whether personal jurisdiction lies, but that such a clause is not by itself sufficient, thus narrowing Lecopulos. Amoco, 605 F.2d, 655. Another Second Circuit decision, Intermeat v. American Poultry, Inc., 575 F.2d 1017 (2nd Cir. 1978), on which the plaintiffs rely, similarly stands for the proposition that an arbitration agreement is but one factor in establishing personal jurisdiction. Intermeat, 575 F.2d at 1023 (considering additional factors that led to jurisdiction in that case, such as the defendant's regularly conducting business in the state).

In addition, the decision in Lecopulos relies on, Victory

8

Transport, Inc. v. Comisaria General, 336 F.2d 354 (2nd Cir. 1964), is itself much narrower in its holding than the language in Lecopulos would suggest.  See Victory Transport, 336 F.2d at 363 (holding that "district court had in personam jurisdiction to enter the order compelling arbitration. By agreeing to arbitrate in New York, where the United States Arbitration Act makes such agreements specifically enforceable, the [defendant] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity.").

In contrast to the above cite cases, the action here has nothing to do with the enforcement of the agreement to arbitrate (It has to do with disputes as to monies owed on the policies which contain that agreement, but the parties are not seeking to arbitrate.)  The Court agrees with Judge Pierce's reasoning in Sterling National Bank v. Southern Scrap Export Co., 468 F. Supp. 1100 (S.D.N.Y. 1979).  In Sterling, the holding of Lecopulos that "[t]he agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York" is limited to those cases where "the relief sought therein was an order compelling arbitration, an order confirming an arbitration award, or an order staying an action pending arbitration."

Sterling, 468 F.Supp. at 1103.[5]

Because the current case does not involve a proceeding that would effectuate the parties' agreement to arbitrate, the rule of Lecopulos does not apply. The mere agreement to arbitrate a given dispute in New York does not give rise to personal jurisdiction in New York for any disputes that may arise between the parties. See Sterling, 468 F.Supp. at 1103-04. Such a minimal contact with New York will suffice to create jurisdiction only where that jurisdiction is necessary to effectuate the parties' agreement. Here, the contacts between Triss and New York are simply too limited to establish personal jurisdiction over Triss for the purposes of the parties' contract dispute. The Court therefore holds that it lacks personal jurisdiction over Triss, and the motion to dismiss is granted.

B. *Motion for Costs*

Defendant moves for the costs of the 2004 Pennsylvania action under Fed. R. Civ. P. 41(d). A discretionary rule, 41(d) allows for a court to award costs if a plaintiff brings an action based on the same claim that it voluntarily dismissed in a previous action.

---

[5] The Court has considered other cases from lower courts in New York that suggest a contrary result, but the Court respectfully finds them unpersuasive. None of these cases persuades the Court that the New York Court of Appeals would reach a result different from the one that this Court reaches here.

Reliance filed a praecipe for writ of summons in Pennsylvania state court in October 2004, and then voluntarily withdrew the action in December. Filing a praecipe for a writ of summons commences an action in Pennsylvania. See PA. R. Civ. P. 1007. The writ of summons gives no indication of the underlying facts of the suit. See Writ of Summons, Affidavit of Timothy P. Law, Exhibit A. Because no complaint was filed, it cannot be said definitively that the current lawsuit is based on the same claim under Rule 41(d). The Court is willing to assume, as Triss argues, that the affidavits and exhibits submitted demonstrate that the underlying claim was the same in the Pennsylvania action as it is in this action. See, e.g., Klochko Affidavit and attached exhibits. Nonetheless, the Court in its discretion still denies the motion.

On a 41(d) motion, payment of fees must be limited to compensation for work that is not usable in the second action. Ivoclar Vivadent, Inc. v. Corporation Cortex Machina, 2004 WL 2315071, at *7 (W.D.N.Y. Oct. 14, 2004); Ames v. Clifford, 1996 WL 563098, at *1 (S.D.N.Y. Oct. 2, 1996). If the current case does indeed involve the same claim as the Pennsylvania action, any substantive work done in the Pennsylvania action corresponds with the work submitted here. It appears that the bulk of the work done by Triss in the Pennsylvania action was in preparation to respond to Reliance's (never-filed) complaint and to stay the

11

arbitration proceeding that Triss believed Reliance would continue to seek.  That work would have been usable in the action before this Court and is thus not reimbursable.

The only work product Triss's attorneys generated that was unique to the Pennsylvania action was the filing of a motion to force Reliance to file its complaint.  The motion is very brief and essentially non-substantive.  The invoices provided by Triss detail the fees charged by their attorneys, but do not tease out what work was unique to the Pennsylvania action.  There is some indication that Triss's attorneys did a small amount of research of Pennsylvania law, and that the attorneys spent some small amount of time preparing the motion.  By the Court's estimation, these costs amounted to no more than a few hundred dollars--far less than the near-30,000 dollar relief that Triss seeks.  In any event, the record is not such that the Court can assess the costs that would be due Triss with any certainty.

The motion for costs is thus denied, without prejudice.

## III. Conclusion

For the reasons stated above, the motion to dismiss for lack of personal jurisdiction is GRANTED and the motion for costs is DENIED. The clerk of court is directed to close this case; any pending motions are now moot.

SO ORDERED

DATED: New York, New York
~~February~~ March 1, 2006

_____
KIMBA M. WOOD
UNITED STATE DISTRICT JUDGE

13